Priority
Send
Enter
Closed
JS-5/JS-6 ✓
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Doctors Marketing Group, Inc. ) | No. CV 08-7617-GW |
| ) | |
| ) | **STATEMENT OF DECISION ON APPEAL** |
| FRONTLINE MEDICAL GROUP, INC., ) | |
| ) | |
| Appellant ) | |
| ) | |
| v. ) | |
| ) | |
| JEFF HOLMES, et al., ) | |
| ) | |
| Appellees, ) | |
| ) | |

*In Re: Doctors Marketing Group, Inc.*, Case Nos. CV-08-7617-GW (appeal) and CV 08-7727-GW (cross appeal). Statement of Decision on Appeal.[1]

## I. BACKGROUND

Frontline Medical Group, Inc. ("Frontline") filed suit against Jeff Holmes, Cindy Ogden, and Does 1-10 ("Holmes," "Ogden," and collectively "Defendants") in Los Angeles County Superior Court on July 27, 2007. Frontline sued both Ogden and Holmes for fraud and negligent misrepresentation, Ogden for breach of fiduciary duty, and Holmes for breach of contract and specific performance. Frontline appeals from the Bankruptcy Court's refusal to vacate its dismissal of Frontline's action. *See* Frontline's Opening Brief at 1-2; Notice of Appeal (Docket No. 2). Holmes cross-appeals the Bankruptcy Court's denial of his request for attorney's fees.

According to Frontline's Complaint, The Monrovia Hospital Complex ("the Complex") went into bankruptcy, leaving the hospital grounds and outlying buildings for sale. *See* Complaint ¶ 5 (Frontline's Excerpts of Record, Tab B). The proceedings related to the eventual sale occurred under the oversight of the Bankruptcy Court. Frontline contacted Ogden (a real estate broker), and expressed interest in buying only the hospital grounds, but not the surrounding buildings. *See* Complaint ¶¶ 6, 8a[2]. Ogden initially told Frontline that the best way to accomplish this was to buy all of the land and to simultaneously convey the outlying buildings to a third party, Holmes, with whom Frontline then formed an oral agreement. *See* Complaint ¶¶ 8b-9. Holmes was to lease a storage building on this property to Frontline as well. *See* Complaint ¶ 9. Frontline and Defendants had a dispute in which Frontline demanded a nonrefundable deposit from Holmes to ensure that the deal would go through. *See* Complaint ¶¶ 10-11. Ogden then changed the proposal and told Frontline to first allow Holmes to buy the entire property, and then purchase the hospital grounds from him. *See* Complaint ¶ 12. Frontline withdrew its bid for the hospital grounds on the assurance that the major terms of the deal would stay the same. *See* Complaint ¶ 13. After his successful bid on the Complex, Holmes allegedly refused to sell the hospital grounds to Frontline, resulting in Frontline's suit. *See* Complaint ¶ 14.

Defendants removed the action to Bankruptcy Court (as a case "related to" Monrovia's bankruptcy proceeding) on August 24, 2007. *See* Frontline's Excerpts of Record (Tab A). They then moved to dismiss the Complaint for failure to state a claim. *See* Frontline's Excerpts of Record (Tab C). The Bankruptcy Court granted the unopposed motion on October 30, 2007. *See* Frontline's Excerpts of Record (Tab D). Frontline did not oppose the motion because of its attorney's (*i.e.* Mr. Green's) serious kidney illness, which Frontline claims constitutes "excusable neglect." *See* Frontline's Opening Brief at 12-14. Due to some confusion relating to Mr. Green's hospitalization, neither Mr. Green nor his partner Mr. Marker filed an opposition to

---

[1] Pursuant to Bankruptcy Rule 8012, this Court determines after examination of the briefs and record, that oral argument is not needed. *See, In re Thirtyacre*, 36 F.3d 697, 701 (7th Cir. 1994).

[2] The Complaint contains two paragraphs numbered "8". They are differentiated herein by reference to paragraphs "8a" and "8b".

the motion. *Id.* Mr. Green did not return to work for two and a half months. *See* Holmes's Opening Brief at 15. On February 7, 2008, Holmes moved for an award of attorney's fees. *See* Frontline's Excerpts of Record (Tab E). Almost six months after the Bankruptcy Court's dismissal ruling, over three months after Mr. Green returned to work and over two months after Holmes filed his attorney's fee motion, Frontline filed a Rule 60(b) motion to vacate final judgment. *See* Frontline's Excerpts of Record (Tab I). The Bankruptcy Court denied both Frontline's Rule 60(b) motion and Holmes's attorney fee motion on October 17, 2008, leading to this appeal and cross-appeal of those rulings. *See* Frontline's Excerpts of Record (Tabs K-L).

Frontline claims on appeal that the Bankruptcy Court did not have subject matter jurisdiction over the case to begin with and therefore the court's dismissal of the case, then subsequent refusal to vacate, was an abuse of discretion. *See* Frontline's Opening Brief at 14. In the alternative, Frontline claims that its failure to file an opposition qualified as excusable neglect, and therefore the Rule 60(b) motion should have been granted. *Id.* Holmes argues that the dismissal and the refusal to vacate were appropriate because Mr. Marker and Mr. Green's actions should not be excused and because Frontline waited too long to challenge the dismissal after it occurred[3]. *See* Holmes's Opening Brief at 9-11. Moreover, Holmes argues that Frontline's actions were reprehensible, and cross-appeals for an award of attorney's fees, which Holmes claims the Bankruptcy Court improperly denied. *Id.*

## II. ISSUES ON APPEAL

1. Did the Bankruptcy Court have subject matter jurisdiction over this action?
2. If so, was the denial of the motion to vacate final judgment proper?
3. Are attorney's fees for Holmes appropriate?

## III. ANALYSIS/DISCUSSION

### A. Subject Matter Jurisdiction

"[A] judgment entered by a court without jurisdiction is void." *Bentley v. Bank of Coronado (In re Crystal Sands Props.)*, 84 B.R. 665, 667 (B.A.P. 9th Cir. 1988). All courts, even reviewing courts, must ensure that they properly have subject matter jurisdiction over an action. *See Hertz Corp. v. Friend*, ___ S.Ct. ___, 2010 WL 605601, *12 (U.S. Feb. 23, 2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."); *Security Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 n.5 (9th Cir. 1997). Therefore, the Court's inquiry must begin with whether the Bankruptcy Court had jurisdiction over this action. On appeal, the existence of jurisdiction is reviewed *de novo*. *See Piombo Corp. v. Castlerock Props. (In re Castlerock Props.)*, 781 F.2d 159, 161 (9th Cir. 1986).

---

[3] Holmes also claims that there are substantive reasons that make dismissal appropriate. However, as noted *infra*, Frontline only appeals the Rule 60(b) ruling.

2

"[D]istrict courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b); *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). This jurisdiction is extended to Bankruptcy Courts, which function as units of district courts. *See* 28 U.S.C. § 151. As such, the scope of jurisdiction for Bankruptcy Courts is identical to that delineated by section 1334(b). *See* 28 U.S.C. § 157(a).

Frontline's suit does not "arise under" title 11, nor does this matter arise in a case under title 11. The more pertinent question is whether it is "related to" a case under title 11. The Third Circuit clarified the meaning of "related to" jurisdiction in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984):

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 994 (emphasis in original); *see also Celotex*, 514 U.S. at 307 n.5 ("Proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate...."); *Vacation Village, Inc. v. Clark County, Nev.*, 497 F.3d 902, 911 (9th Cir. 2007) ("Where the cause of action is not of the first type of proceeding identified in *Celotex*...courts are concerned with the closeness of the relationship between the proceeding and the bankruptcy estate."); *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) ("A bankruptcy court's 'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'") (quoting *Mann v. Alexander Dawson (In re Mann)*, 907 F.2d 923, 926 n.4 (9th Cir. 1990)), *cert. denied*, 547 U.S. 1206 (2006). The Ninth Circuit has adopted the *Pacor* test to determine whether "related to" jurisdiction exists. *See Fietz v. Great Western Savs. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988).[4]

Frontline contends on appeal that the Bankruptcy Court had no subject matter jurisdiction because this lawsuit does not fall within "related to" jurisdiction. As it points out, Frontline is not trying (and has not tried) to challenge the sale, or any other aspect of the original bankruptcy proceedings.[5] Though in presenting the factual background for its Complaint, Frontline set forth

---

[4] No party argues that the Bankruptcy Court had ancillary jurisdiction over Frontline's lawsuit. *See, e.g., Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 549 (9th Cir. 2006).

[5] Indeed, Holmes himself notes as follows:

> Frontline could have objected to the Sales procedure motion; the Sale motion; or the Sale Order including the sales procedure, but Frontline did not do so. Frontline could have appealed the Sale Order including the sales procedure, or sought a motion for reconsideration of the Sale hearing, but did not do so.

the parties' alleged original plans to have Frontline purchase the Complex from the trustee, the Complaint then makes clear that those initial plans were changed such that Holmes would agree to purchase the Complex, with a later sale of parts of it to Frontline.

This lawsuit was filed on July 27, 2007, *after* the Bankruptcy Court had already authorized the sale of the property to Monrovia MOB, LLC ("Monrovia")[6] on June 8, 2007, and the estate had in fact sold the Complex, and resulted from Holmes's subsequent refusal to sell a portion of the Complex to Frontline. While Frontline's lawsuit indisputably "relates to" the Complex, it does not fall within the confines of "related to" jurisdiction; the estate would not be affected by the results of this lawsuit because the estate had already, in a sense, washed its hands of the Complex by the time these events took place. *Cf. Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.)*, 439 F.3d 545, 547-48 (9th Cir. 2006) (ruling that "related to" jurisdiction was lacking for purposes of determining whether settlement agreement released one creditor's claim against another creditor in light of the fact that, by that time, debtor's Chapter 11 case had been dismissed and the settlement agreement had been "fully implemented" with respect to the debtor); *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1192, 1194 (9th Cir. 2005) (concluding that "related to" jurisdiction existed in connection with claims for, among other things, breach of settlement agreement and debtors' liquidating/reorganizing plan, brought post-confirmation *by the debtor's successor and the bankruptcy trustee* against third parties); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1438 (9th Cir.) (concluding that post-petition state law claims asserted *against the bankruptcy trustee and his agents* for conduct intertwined with trustee's sale of property belonging to bankruptcy estate was a core proceeding subject to federal jurisdiction), *cert. denied*, 515 U.S. 1131 (1995); *Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306-07 (9th Cir. 1989) (concluding that "related to" jurisdiction existed for action by a *creditor* seeking equitable relief – specific performance of a land sale contract – against a non-debtor/non-creditor because the litigation might "directly affect the estate's obligation to [the same] creditor[] whose [other] claims are currently before the bankruptcy court"). The Bankruptcy Court seems to have misconstrued the tenor of Frontline's Complaint in this regard, though it also, in the end, seemed ultimately to recognize the jurisdictional problem, only declining to address it because it considered the issue "moot." *See* Frontline's Excerpts of Record (Tab L at 3:16-21, 14:6-15:14, 16:10-12).

Although Holmes argues that Frontline's action cannot proceed due to the effect of the sale under 11 U.S.C. § 363(f) (without providing any authority for the proposition that a section 363(f) sale wipes out claims against *the purchaser* of property based upon a distinct contract with the purchaser or representations made by the purchaser – not the debtor, and therefore not simply derivative of any claim against the debtor – in relation to what does or does not happen with the property in question *after* the estate's sale to the purchaser[7]), there is nothing preventing Holmes raising that argument (or any other argument properly attacking the merits of Frontline's

---

Holmes's Opening Brief at 7.

[6] Holmes is the managing principal of one of the three managing members of Monrovia. *See* Holmes's Opening Brief at 5.

[7] The cases cited at pages 22-23 of Holmes's Opening Brief are of no assistance to Holmes in this regard.

4

claims) in state court.[8]  Moreover, Holmes's argument in this regard only further demonstrates the absence of "related to" jurisdiction – his attempt to seek protection under section 363(f) is not an attempt to forestall an effect on the bankruptcy estate, but is simply an effort aimed at precluding litigation against Holmes and/or Monrovia.

It may be true that the estate would have never sold the Complex to a buyer had it known that the buyer would be embroiled in such a dispute.  However, the test is not whether the estate or even the Bankruptcy Court would have done things differently had they had more facts at their disposal, but rather, whether an outcome in this case would affect the bankruptcy estate. *See Pacor*, 743 F.2d at 994.  It clearly would not because it could never affect the transaction between the bankruptcy estate and Monrovia.  Nor does Frontline's action seek to somehow collaterally attack the Bankruptcy Court's findings supporting the estate's sale of the Complex to Monrovia.  Therefore, Frontline is correct to argue that the Bankruptcy Court lacked subject matter jurisdiction.

As such, the Court will reverse and vacate the Bankruptcy Court's rulings in this case, remand and order the Bankruptcy Court to dismiss the purported federal claims for lack of subject matter jurisdiction and remand the remaining state law causes of action to state court.

### B. The Bankruptcy Court's Refusal to Vacate the Dismissal and Resulting Judgment[9]

Assuming arguendo the existence of subject matter jurisdiction over this matter, this Court would find that the Bankruptcy court did not err in refusing to vacate the dismissal and resulting judgment.  Frontline moved to vacate final judgment by filing a Fed. R. Civ. P. 60(b) motion.  Federal Rule of Bankruptcy Procedure 9024 applies Rule 60 in its entirety to bankruptcy cases. *See Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 740 (9th Cir. 1990).  In addition to where a "judgment is void," Fed. R. Civ. P. 60(b)(4),[10] a "court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect…or (6) or any other reason that justifies relief." Fed. R. Civ. P. Rule 60(b)(1), (6).  Upon appeal, the abuse of discretion standard of

---

[8] Of course, a defense based in federal law to an action raising only state law claims would not provide a basis itself for removal of the action from state to federal court. *See, e.g., Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974).

[9] An appeal from a post-judgment order, such as a Rule 60(b) ruling, does not bring up the underlying judgment for review. *See Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1257 (9th Cir.), *cert. denied*, 543 U.S. 870 (2004). Therefore, because Frontline did not specifically include it within its appeal, the propriety of the Bankruptcy Court's ruling on the motion to dismiss in this matter is not at issue on this appeal.

[10] Because that basis for vacatur simply duplicates the subject matter jurisdiction issue addressed above, it will not be separately analyzed here.  Needless to say, if the Court agrees that subject matter jurisdiction is lacking (a question of law reviewed *de novo*, even in the Rule 60(b) context, *see Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)), the Bankruptcy Court's judgment was void and should have been vacated, even if the Bankruptcy Court's ruling could not be validly attacked on any other Rule 60(b) basis.  Even if Frontline never explicitly argued for application of Rule 60(b)(4), *see* Frontline's Excerpts of Record (Tab I), as noted above this Court *must* assess the existence or non-existence of subject matter jurisdiction.

review applies to orders involving Rule 60(b) motions. *See Briney v. Burley (In re Burley)*, 738 F.2d 981, 988 (9th Cir. 1984).

Frontline first argues that it is entitled to a remand because Mr. Green's illness qualifies as "excusable neglect" under Rule 60(b)(1). To show excusable neglect, Frontline must demonstrate that the following four factors cut in its favor: (1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Under this analysis, the Bankruptcy Court found that Mr. Green (despite his illness) and his partner Mr. Marker had plenty of time and numerous opportunities to be heard in court, but failed to do so. *See* Frontline's Excerpts of Record (Tab L at 2).

As noted, this Court must review the Bankruptcy Court's findings under an abuse of discretion standard. *See Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir.1983) ("[D]etermination of excusable neglect is left to the sound discretion of the district court."). An abuse of discretion occurs where the trial court applies the incorrect law or where it rests its decision on a clearly erroneous finding of material fact. *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223 (9th Cir. 2000). There is no indication here that the Bankruptcy Court in this instance based its decision on clearly erroneous factual findings or an incorrect legal standard.

A client is generally responsible for acts of negligence by his counsel, as clients voluntarily choose their own representation. *Cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). It is understandable that Mr. Green faced a life-threatening situation which prevented him from coming to work. However, the fact that his illness was a chronic one should have given Mr. Green an opportunity to make other arrangements in the event that he got ill. This may have included keeping Mr. Marker informed about his cases. Though Frontline argues that Green and Marker practiced "much like sole practitioners" and did not "share work or cases or responsibility," Frontline's Opening Brief at 13, it also admits that Mr. Green did in fact have Mr. Marker draft the Complaint for this case, that Mr. Marker communicated with both Ogden's and Holmes's attorneys, and that Mr. Marker actually prepared a draft opposition to the motion to dismiss. Clearly, therefore, their normal relationship was subject to some exceptions which apparently was the situation in this case. Moreover, almost six months passed before Frontline got around to filing a Rule 60(b) motion.

Though the Court might have reached a different conclusion on the Rule 60(b) motion had it decided the issue in the first instance or if its appellate review was *de novo*,[11] the

---

[11] In fact, on a *de novo* review of the four factors said to govern a Rule 60(b)(1) excusable neglect-based motion, as set forth in *Pioneer*, only the third and – potentially (because, though there was delay, there is little suggestion of what "impact on judicial proceedings" the delay had here) – the second of the factors would work to Frontline's disfavor. The "prejudice" Holmes identifies – having to continue defending against what he terms Frontline's "frivolous" claims and general prejudice to the trustee "if orders of the Bankruptcy Court are easily tampered with after the fact" – improperly presumes that Frontline's claims are "frivolous" and overlooks the fact that Frontline's action does not seek to affect the trustee's sale to Monrovia (putting aside the fact that <u>Holmes</u> has no basis to complaint about prejudice to the trustee).

Bankruptcy Court's ruling was not an abuse of discretion.[12] Therefore, if the Court were to reach this issue, it would find that the Bankruptcy Court did not abuse its discretion in refusing to vacate the dismissal and resulting judgment.

### C. Attorney's Fees

Holmes first claims that he is entitled to sanctions against Frontline in the form of attorney's fees under 11 U.S.C. § 105, Federal Rule of Bankruptcy Procedure 9011 and Fed. R. Civ. P. 11, because Frontline's suit was "frivolous" and its conduct reprehensible. Sanctions are appropriate if the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974). The standard of review in this area is somewhat unclear. Some authority supports the view that the Bankruptcy Court's determination regarding Frontline's "good faith" is reviewed under the clearly erroneous standard, where its determination of whether the specific conduct in question violated the Rule in question is reviewed *de novo*. *See Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 847 F.2d 597, 599-600 (9th Cir.), *cert. denied*, 488 U.S. 892 (1988); *Raymond L. Asher, a Professional Corporation v. Film Ventures Int'l, Inc. (In re Film Ventures Int'l, Inc.)*, 89 B.R. 80, 83 (B.A.P. 9th Cir. 1988); *In re Greco*, 113 B.R. 658, 662 (D. Haw. 1990), *aff'd sub nom. Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991). Other authority indicates that the review should be under a unitary abuse of discretion standard (which would necessarily include the clearly erroneous and *de novo* reviews mentioned above). *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990); *In re Brooks-Hamilton*, 400 B.R. 238, 254-55 (B.A.P. 9th Cir. 2009). In any event, whichever standard applies, the Bankruptcy Court did not err as to this issue (assuming the Court needs to reach it).

Frontline's attorney's illness explains to some extent the delays in litigation, and as the Bankruptcy Court pointed out, "at least some grounds were shown for some confusion on defending [against the motion to dismiss]," making sanctions inappropriate. Frontline's Excerpts of Record (Tab L at 4). Moreover, the imposition of sanctions is not meant to be a default option whenever a party makes a mistake. "Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980). Additionally, it does not appear that Frontline's claims themselves are frivolous, even if some might be stronger than others and all might ultimately fail on the merits. Though the Bankruptcy Court did acknowledge that the claims were insufficiently pled, there is no evidence that they were made in bad faith or completely lack any merit. *See* Frontline's Excerpts of Record (Tab L at 4).

Holmes contends that he is also entitled to an award of attorney's fees under Cal. Civ. Code Section 1717, which entitles a prevailing party to attorney's fees, so long as there is a specific provision in a contract that calls for it. *See* Cal. Civ. Code § 1717. In his cross-appeal, Holmes cites to *Hsu v. Abbara*, 9 Cal. 4th 863, 870 (1995), quoting in pertinent part: "It is now

---

[12] Holmes argues that Frontline's motion was subject to what is now Local Bankruptcy Rule 9013-4(a), meaning that its motion could only have been granted had there been "accident or surprise that could not have been guarded against by the exercise of ordinary prudence." However, that rule (which, on its face applies only to motions brought pursuant to Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(a)) also indicates that the list provided is inclusive, not exclusive. Therefore, application of this rule does not change anything in the above analysis. In any event, ultimately the Court would agree that reversal on this issue is not appropriate.

settled that a party is entitled to attorney fees under section 1717 'even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney's fees had it prevailed.'" *See* Holmes's Brief at 31. Holmes claims that the Bankruptcy Court erred in finding that attorney's fees under section 1717 could not be awarded if there was no written or oral contract. *See* Frontline's Excerpts of Record (Tab L at 3-4). Though Frontline did contend in its complaint that there was an oral contract, it makes no specific allegation that the oral contract in question had an attorney's fee "provision," as is required by *Hsu*. *See* Frontline's Excerpts of Record (Tab L at 11); *cf. VSL Corp. v. Gen. Techs., Inc.*, No. C 96-20446 RMW (PVT), 1998 U.S. Dist. LEXIS 7377, *15-17 (N.D. Cal. Jan. 5, 1998). Therefore, under section 1717, Frontline would not have prevailed on the issue of attorney's fees under a contract, even if the Bankruptcy Court were to decide that an oral contract existed. The Bankruptcy Court's ruling that an award of attorney's fees to Holmes is not appropriate would be affirmed, even if the Bankruptcy Court erred in its legal analysis of fee availability under section 1717.

## IV. CONCLUSION

The Court will reverse the Bankruptcy Court's decision, vacate the judgment as void, and instruct the Bankruptcy Court to dismiss the federal claims for lack of subject matter jurisdiction and remand the remaining state causes of action to state court for future proceedings on the merits.

DATED: This 1st day of March, 2010.

/s/ George H. Wu
GEORGE H. WU
United States District Judge